Filed 3/25/24  P. v. Ruiz CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL ALBERTO RUIZ,<br><br>    Defendant and Appellant. | B323988<br><br>(Los Angeles County<br>Super. Ct. No. BA501067) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

The Law Offices of Aaron J. Schechter and Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Miguel Alberto Ruiz appeals from a judgment entered after a jury found him guilty of one count of stalking a victim and one count of violating a protective order pertaining to a different victim. Ruiz admitted two prior strike convictions, the trial court found five aggravating factors relating to Ruiz's prior convictions to be true, and the jury found five other aggravating factors to be true. The trial court sentenced Ruiz to six years in prison: the upper term of three years on the stalking count, doubled based on one of the prior strikes.

Ruiz contends the trial court erred in imposing the upper term sentence because, among other things, the trial court found to be true three "subjective" aggravating factors that "cannot be established by a certified record of conviction alone and should have been submitted to the jury"; and the trial court relied on "three aggravating factors that the jury did not specifically find true as to the felony stalking count," as opposed to the misdemeanor count for violation of a protective order. For reasons explained below, we conclude that any such error was harmless. We also reject Ruiz's challenge to a fine and assessments the trial court imposed.

## BACKGROUND

### I.    Charges

An amended information charged Ruiz with stalking Abigail Rivaz between April 1, 2021 and September 21, 2021, a felony. (Pen. Code,[1] § 646.9, subd. (a); count 1.) The stalking began about one month before Ruiz turned 25 years old. Count 2 charged Ruiz with violating protective orders pertaining to Arlen Santos on or about February 2, 2022, a misdemeanor. (§ 166,

---

[1] Undesignated statutory references are to the Penal Code.

subd. (c)(1).) The amended information alleged Ruiz had two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)): a February 2020 conviction for battery causing serious bodily injury (§ 243, subd. (d)), and a February 2021 conviction for attempted first degree burglary (§§ 459 & 664). As to count 1, the felony stalking count, the amended information alleged numerous circumstances in aggravation, some relating to the crime and some relating to Ruiz.

## II.    Overview of Evidence Presented at Trial

### A.    Prosecution case

#### 1.    Count 1 – stalking of Rivaz

Rivaz's mother met Ruiz at a grocery store. Beginning in April 2021, Ruiz began coming over, uninvited, to the apartment Rivaz shared with her mother. He would appear late at night, roaming around the back of the building or in front of their kitchen window. He would knock on their door or window and call out Rivaz's name. On one occasion, he had bricks in his hands. On another occasion, he had a knife in his waistband. One night, he yelled to Rivaz to come outside and told her he was going to take her to Tijuana because people they both knew were asking him to take her there. These incidents scared Rivaz. She repeatedly told Ruiz to leave the property and not return.

On September 1, 2021, after Ruiz had come to the home around five times, Rivaz went to a police station and filed a report. Thereafter, Ruiz returned to Rivaz's home around five more times. On the last occasion, Ruiz told Rivaz he had come by to apologize to her. Rivaz informed him that she had filed a police report. He stated he did not care and would be down the

3

street if somebody was looking for him. Rivaz contacted the police, and Ruiz was arrested.

In addition to Rivaz's testimony, her mother and boyfriend also testified at trial regarding their encounters with Ruiz at the home they shared. On one occasion, Ruiz swung a piece of wood at Rivaz's mother when he confronted her as she returned home from the grocery store.

### 2. Count 2 – violation of protective order pertaining to Santos

Santos testified at trial. She and Ruiz lived in the same apartment building. Beginning in 2019, Ruiz made regular, unwanted contact with Santos. He would regularly follow her off the premises as she walked her dog; he would stand in front of her door or window and look inside her apartment; and he would place notes inside her locked car. She told him she was not interested in having contact with him.

Santos feared for her safety as Ruiz's behavior escalated. In March 2020, there was a physical confrontation between Ruiz and Santos's brother about Ruiz staring into Santos's window. According to Santos, Ruiz became violent and his family was unable to calm him down, so Santos called the police. An officer talked to Ruiz, but did not arrest him. Santos obtained a restraining order, which was served on Ruiz on March 19, 2020.

The next day, Ruiz attempted to gain access to Santos's apartment. He took the screen off the window and started to slide the window open. She locked her windows and dialed 911. As she waited for officers to respond, Ruiz went to her balcony and attempted to remove the air conditioning unit from her bedroom window. Officers took Ruiz into custody. After this

4

incident, Santos obtained a three-year, permanent restraining order against Ruiz, which was served on him in April 2020.

Ruiz continued to contact Santos. Charges were brought against him. A protective order was issued in that case on July 9, 2021, preventing him from having contact with her, including personal, electronic, telephonic, or written. Thereafter, in September 2021, Santos's security camera captured video of Ruiz pacing in front of her window, while holding a rock and shaking it at the camera. He also approached her door and moved the doorknob.

Count 2 in this case, for misdemeanor violation of protective and stay away orders, relates to a February 2022 incident when Santos received a Valentine's Day card from Ruiz, the contents of which scared her.

**B. Defense Case**

Ruiz testified at trial. He stated that since he was 13 years old, he used methamphetamine daily. He also began drinking alcohol at 13 and became addicted at 15. He was using these substances at the time of the offenses in this case. He further testified that he had prior convictions for attempted burglary and battery causing great bodily injury.

A psychologist who interviewed Ruiz testified that he suffered from a stimulus use disorder due to methamphetamine and alcohol use. The psychologist opined that Ruiz "was experiencing an amphetamine induced psychosis and alcohol intoxication around the time of the offense conduct which influenced his decision making, his judgment and ultimately his behavior." Further, "he may have been experiencing" an erotomaniac delusion, or "fixed false belief" that someone was in love with him.

## III. Ruiz's Admission of Prior Strike Convictions and the Jury's Verdicts on the Charged Offenses

Prior to the reading of the jury's verdicts, Ruiz waived his right to a jury trial on the prior strike conviction allegations in the amended information. He admitted the 2020 strike conviction for battery causing serious bodily injury and the 2021 strike conviction for attempted first degree residential burglary. He indicated he understood these prior convictions were "factors that would be used to increase" his sentence.

The jury found Ruiz guilty of count 1, stalking Rivaz, a felony, and guilty of count 2, violating a protective order, a misdemeanor.

## IV. Trial on Aggravating Factors

As the trial court and the parties prepared for the jury trial on the aggravating factors, the prosecutor told the court that both sides agreed, "the aggravating factors that have to do specifically with the defendant's prior convictions and performance on probation or parole is something that the court himself can decide." Defense counsel added, "It's [section] 1170[, subdivision] (b)(3), Your Honor. It's within the purview of the court." (See § 1170, subd. (b)(3) ["the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury"].)

The trial court informed the jury it had to decide whether the following five factors were true, based on proof beyond a reasonable doubt: (1) the "crime involved a threat of great bodily injury"; (2) "defendant was armed with or used a weapon, to wit: a knife or bricks, at the time of the commission of the crime"; (3) "defendant showed lack of remorse with respect to count 1 or count 2"; (4) "defendant committed the crimes in and around

6

[v]ictim Abigail Rivaz'[s] and [v]ictim Arlen [] Santos'[s] homes";
and (5) "defendant made statements indicating an intent to
kidnap [v]ictim Abigail Rivaz."

During closing argument regarding the aggravating factors,
the prosecutor gave the jury an explanation of how the evidence
presented at trial supported each of the aggravating factors. The
prosecutor argued that aggravating factors 1, 3, and 4 listed
above applied to both the crime against Rivaz (stalking) and the
crime against Santos (violation of a protective order). As part of
his closing argument, defense counsel asserted, among other
things: "I would just posit that I don't believe that the jury
should find any aggravating factors as to count 2, because these
are only relevant to felony charges, and there is only one felony
charge, the count of stalking." Neither the prosecutor nor the
trial court commented on this assertion by defense counsel.

The jury found the five aggravating factors submitted to it
to be true. The jury's verdict form does not indicate that any true
finding relates to a particular count(s).

## V. Sentencing

Defense counsel filed a sentencing memorandum, arguing
in pertinent part that Ruiz is entitled to the statutory
presumption of a lower term sentence because (1) he "has
experienced psychological, physical, or childhood trauma" within
the meaning of section 1170, subdivision (b)(6)(A), which he
described as methamphetamine use since the age of 13,
constituting substance abuse disorder, and methamphetamine
induced psychosis at the time he stalked Rivaz; and (2) he was a
youth at the time he committed the offenses (§ 1170, subd.
(b)(6)(B)), i.e., under 26 years of age (§ 1016.7, subd. (b)). Ruiz
further asserted that the five aggravating factors found true

7

beyond a reasonable doubt by the jury do not outweigh the mitigating factors of his substance abuse and youth. Ruiz attached several documents to the sentencing memorandum, including two psychological reports and a paralegal's summary of an interview with Ruiz's family members, all detailing his history of methamphetamine and alcohol abuse.

The prosecution filed a sentencing memorandum, asserting eight aggravating factors. In addition to the five aggravating factors found true by the jury, the prosecution cited three additional aggravating factors based on Ruiz's criminal history: (1) Ruiz's prior convictions are numerous and of increasing seriousness; (2) Ruiz served prior county jail and prison terms; and (3) Ruiz's prior performance on probation and parole was poor. The prosecution argued there are no factors in mitigation, stating, "voluntarily taking drugs does not qualify as a mental or physical condition that significantly reduced culpability for the crimes." The prosecution recommended the trial court sentence Ruiz to eight years in prison: the upper term of three years for stalking (count 1),[2] doubled to six years for one of the prior strike convictions, plus one year for violating the protective order (count 2), and one year for violating his probation in another case. The prosecution attached to the sentencing memorandum a victim impact letter from Santos.

At the outset of the sentencing hearing on September 27, 2022, the prosecutor asked the trial court to make findings on the aggravating factors alleged in the amended information that relate to Ruiz's criminal history—i.e., the factors the parties

---

[2] The lower term for felony stalking is 16 months, and the middle term is two years. (§§ 18 & 1170, subd. (h)(1).)

8

previously agreed the court, rather than the jury, could determine. Using records to which Ruiz did not object, the court found the following five factors to be true: (1) Ruiz has engaged in violent conduct that indicates a serious danger to society (Cal. Rules of Court,[3] rule 4.421(b)(1)); (2) Ruiz's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); (3) Ruiz has served a prior term in prison or county jail (rule 4.421(b)(3)); (4) Ruiz was on probation, mandatory supervision, post release community supervision, or parole when the crime was committed (rule 4.421(b)(4)); and (5) Ruiz's prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)). The court asked defense counsel if he had any "questions or comment regarding the court's findings," and counsel responded in the negative.

Ruiz waived a hearing on whether he violated his probation in another case because of his convictions in the present case. The trial court found him in violation of his probation.

Regarding sentencing, defense counsel reiterated the arguments made in Ruiz's sentencing memorandum, as summarized above. The prosecutor referenced one of the psychological reports attached to Ruiz's sentencing memorandum, noting, in pertinent part: "[Ruiz] denied ever being physically or sexually abused. He denied history of witnessing violence in the family. He denied having problems with learning. Denied ever being in special ed classes. [¶] He seemed to have a normal childhood playing football, basketball,

_____

[3] Undesignated rules references are to the California Rules of Court.

9

soccer, gymnastics, piano, guitar. He had jobs that he had for a good amount of time. [¶] He denied history of psychiatric treatment, being prescribed psychiatric medication. He was never hospitalized for mental problems. He denied most symptoms of distress. He denied having problems with sleep or appetite. He did not show signs of low self-esteem. He denied ever attempting suicide or having suicidal thoughts, denied panic attacks, den[ied] hearing voices or seeing things that others did not see."

In sentencing Ruiz, the trial court acknowledged defense counsel's arguments regarding a presumptive lower term sentence under section 1170, subdivision (b)(6). The court commented:

"Now, while the court notes there was testimony about a psychosis and the like and a history of drug and alcohol abuse, the court also takes note of the aggravating factors found true beyond a reasonable doubt by the jury[:] that the case involved a threat of great bodily injury; that the defendant was armed with or used weapons, being a knife and bricks; three, the defendant showed a lack of remorse[;] the crimes [were] committed in or around the house of Ms. R[ivaz] as well as Ms. Santos; and five, defendant made statements indicating his intent to kidnap Ms. Rivaz.

"The court finds that the factors in aggravation significantly outweigh any mitigation present in this case and that it would be [*sic*] a sentence of the low term or the mid-term would be contrary to the interest of justice.

"Hearing the witnesses testify about what they went through and the steps they took to avoid conflict and the what I'll call reign of terror that was placed upon them by the defendant, I

10

cannot justify the -- albeit there's mitigation presented and testified to -- I cannot justify a low term or mid-term sentence.

"And -- and I'm also taking into consideration the defendant's youth, relative youth, I should say."

The trial court sentenced Ruiz to six years in prison: the upper term of three years on count 1 (stalking), doubled based on one of the two prior strike convictions Ruiz admitted. The court declined the prosecution's recommendation to impose a consecutive one-year term for count 2 (violation of a protective order), and instead imposed a concurrent one-year term. The court also declined the prosecution's recommendation to impose a consecutive one-year term for the probation violation, and the court terminated Ruiz's probation in the other case. The court issued protective orders for Rivaz and Santos.

Regarding fines and assessments, the trial court asked defense counsel, "Are there any financial issues regarding -- for the defendant regarding payment of the restitution fine, parole, and . . . the court security fee, criminal conviction facilities assessment[?]" The following exchange occurred between defense counsel and the court:

"[Defense counsel]: . . . I will just make the record, Your Honor, that my impression -- Mr. Ruiz has been borderline or actually homeless in the last few years. I know he held out that he worked, but I've never seen any confirmation of that. He's represented by the Office of the Public Defender which means he's presumptively indigent.

"The Court: Well, that doesn't mean the defendant couldn't earn or have earnings such that he couldn't pay for a restitution fine or court security fee or criminal conviction facilities assessment just because he's represented by your office.

11

"[Defense counsel]: True. But I also have nothing -- so my representation to the court would be as I've already made it and that the court has discretion to waive those fines and fees as it deems appropriate subject to an ability to pay hearing. I'm not really prepared to go forward on an ability to pay hearing, Your Honor, but if the court wants to calendar one, happy to do it."

The trial court proceeded and imposed the following fines and assessments: the minimum restitution fine of $300 (§ 1202.4, subd. (b)), which the court stayed;[4] a $300 parole revocation fine, which was stayed unless parole was revoked (§ 1202.45); a $30 court facilities assessment for each of the two convictions, or $60 (Gov. Code, § 70373); and a $40 court operations assessment for each of the two convictions, or $80 (§ 1465.8). Accordingly, the total amount due was $140. The court further commented, "I do think he would have the ability to pay based upon any earnings he would accrue in state prison."

## DISCUSSION

## I. Upper Term Sentence

Section 1170, subdivision (b) provides, in pertinent part: "(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶]

---

[4] The trial court stated on the record at the sentencing hearing: "As to the restitution fine, the court's going to impose the minimum of $300 -- as to count 1. And I'm going to either stay or strike it as the law permits." The court's September 27, 2022 minute order from the sentencing hearing states that the court stayed the restitution fine imposed under section 1202.4, subdivision (b).

(2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . ."

Subdivision (b)(6) of section 1170 provides, in pertinent part: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 [under 26 years of age] at the time of the commission of the offense. . . ."

Ruiz contends the trial court erred in imposing the upper term on count 1 for stalking because (1) the trial court found to be true three "subjective" aggravating factors that "cannot be established by a certified record of conviction alone and should have been submitted to the jury"; (2) the trial court relied on "three aggravating factors that the jury did not specifically find true as to the felony stalking count," as opposed to the misdemeanor count for violation of a protective order (count 2); and (3) the trial court relied on lack of remorse, as found by the jury, but "lack of remorse is not a valid circumstance in aggravation."

13

Ruiz further contends the asserted errors require remand for resentencing because the trial court must determine whether to impose the upper term based on the remaining, valid aggravating factors.  He argues that the lower term was the presumptive term under section 1170, subdivision (b)(6), because he was 24 years old when he began stalking Rivaz, and his substance abuse and methamphetamine induced psychosis constitute psychological, physical, or childhood trauma within the meaning of section 1170, subdivision (b)(6)(1).

### A.    Aggravating factors not in dispute

In this appeal, Ruiz does not challenge the trial court's use of the following two aggravating factors found true by the trial court: (1) Ruiz has served a prior term in prison or county jail; and (2) Ruiz was on probation, mandatory supervision, post release community supervision, or parole when the crime was committed.

Moreover, Ruiz does not challenge the trial court's reliance on the following two aggravating factors found true beyond a reasonable doubt by the jury: (1) Ruiz "was armed with or used a weapon, to wit: a knife or bricks, at the time of the commission of the crime"; and (2) Ruiz "made statements indicating an intent to kidnap [v]ictim Abigail Rivaz."  He concedes that these two aggravating factors apply only to the felony stalking count.

Thus, Ruiz challenges the use of three aggravating factors found true by the trial court and three aggravating factors found true by the jury to impose the upper term sentence.  We address each of the challenged factors below, beginning with the factors the jury found to be true.

14

### B. Challenge to the trial court's reliance on certain aggravating factors found true by the jury

To impose an upper term sentence for a crime based on circumstances in aggravation, the circumstances in aggravation must relate to *that particular* crime. (§ 1170, subd. (b)(2).) We agree with Ruiz that here, in imposing the upper term on the stalking count, the trial court expressly relied on certain aggravating factors when it was not clear that the jury found those factors true as to the stalking count.

First, the jury found to be true the aggravating factor that the "crime involved threat of great bodily injury." The verdict form does not indicate whether the jury found this factor true as to count 1 (stalking) or count 2 (violation of protective order). The prosecutor argued to the jury that this factor applied to *both* counts 1 and 2. The trial court did not instruct the jury that the aggravating factors applied only to the felony stalking count as opposed to the misdemeanor count for violating a protective order. On the record before us, we cannot discern whether the jury found this factor true as to the stalking count.

Second, the jury found to be true the aggravating factor that Ruiz "showed lack of remorse with respect to count 1 *or* count 2." (Italics added.) Again, on the record before us, we cannot determine if the jury found this factor true as to the stalking count.

The third aggravating factor Ruiz challenges here is that he "committed the crimes in and around [v]ictim Abigail Rivaz['s] *and* [v]ictim Arlen [] Santos['s] homes." (Italics added.) While Ruiz is correct that the verdict form does not specify to which count this finding pertains, it is clear that this finding applies to

15

*both* counts. If Ruiz committed a crime in and around Rivaz's home, as the jury clearly found, that crime could only have been the stalking count, based on the evidence presented to the jury. Thus, we conclude the trial court properly relied on this aggravating factor in imposing the upper term on the stalking count.

Next, we address Ruiz's contention that the trial court improperly relied on certain aggravating factors that the court found to be true. Thereafter, we address whether there was any cumulative prejudice from the court's reliance on improper factors in imposing the upper term sentence.

**C.    Challenge to use of aggravating factors found true by the court**

Ruiz contends the following three aggravating factors that the trial court found to be true are "subjective" aggravating factors that "cannot be established by a certified record of conviction alone and should have been submitted to the jury": (1) Ruiz has engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); (2) Ruiz's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); and (3) Ruiz's prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)).

The Attorney General argues Ruiz forfeited this contention because defense counsel agreed with the prosecutor's statement to the trial court that "the aggravating factors that have to do specifically with the defendant's prior convictions and performance on probation or parole is something that the court himself can decide." In support of this agreement, defense counsel cited to the trial court section 1170, subdivision (b)(3),

16

which provides that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Ruiz argues that to the extent his trial counsel was incorrect, and he had a right to a jury trial on some of the aggravating factors the trial court found, his waiver of that right had to be made personally, knowingly, voluntarily, and intelligently, which did not occur here. (See *People v. Hall* (2023) 97 Cal.App.5th 1084, 1096 ["There are two exceptions to a defendant's Sixth Amendment right to a jury trial on aggravating facts—facts admitted by the defendant and the fact of a prior conviction. [Citations.] Otherwise, the defendant must waive his Sixth Amendment right to jury trial in order for the trial court to find aggravating circumstances that increase the defendant's sentence beyond the statutory minimum"].) Ruiz further argues we may review his contention in the absence of his objection below because the issue "affected [his] substantial rights." (§ 1259.) In light of these arguments, we review the contention on the merits.

As Ruiz acknowledges, there is case law supporting the position defense counsel took on this issue in the trial court. For example, in *People v. Pantaleon* (2023) 89 Cal.App.5th 932, the Court of Appeal, in discussing the scope of section 1170, subdivision (b)(3), explained, "the fact of a prior conviction includes 'other related issues that may be determined by examining the records of the prior convictions.' [Citation.] As relevant to this appeal, the fact of a prior conviction encompasses a finding that prior convictions are numerous or of increasing seriousness . . . ." (*Pantaleon*, at p. 938, quoting *People v. Black* (2007) 41 Cal.4th 799, 819, and citing *People v. Towne* (2008) 44

Cal.4th 63, 70-71.) In other words, the appellate court in *Pantaleon* concluded that a court may decide the aggravating factor that a defendant's prior convictions are numerous or of increasing seriousness; the factor need not be submitted to a jury. (*Pantaleon*, at p. 938.) Similarly, in *People v. Wiley* (2023) 97 Cal.App.5th 676, 683, review granted March 12, 2024, S283326, the Court of Appeal concluded that "the Sixth Amendment did not require that a jury make the determinations . . . whether [the defendant]'s convictions were of increasing seriousness and whether his previous performance on probation was poor (to the extent that performance was established by his record of convictions)."

Based on the foregoing authorities, we conclude the trial court could determine based on the record of convictions whether Ruiz's prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)) and whether his prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)). Ruiz does not challenge the sufficiency of the evidence supporting these findings. He only contends that the jury, and not the trial court, was permitted to make these findings—a contention we reject. We note it is unlikely the trial court found Ruiz's prior convictions were "numerous," as the record shows he has a total of two prior convictions. (See, e.g., *People v. Berry* (1981) 117 Cal.App.3d 184, 191 [two prior convictions "cannot be 'numerous' "].) We presume the court found his two prior convictions—battery causing serious bodily injury and attempted first degree residential burglary—were of increasing seriousness.

We agree with Ruiz that the trial court could not properly determine based on his record of convictions the aggravating factor that he engaged in violent conduct *that indicates a serious*

18

*danger to society* within the meaning of rule 4.421(b)(1). This is a subjective factor that should have been submitted to the jury. A certified record of Ruiz's convictions for battery causing serious bodily injury and first degree residential burglary, by itself, cannot establish whether Ruiz presents a serious danger to society, without impermissible factfinding by the court. (Cf. *People v. Ross* (2022) 86 Cal.App.5th 1346, 1352-1353, review granted Mar. 15, 2023, S278266 ["the record on appeal includes certified records of defendant's prior convictions which support the court's consideration of the rule 4.421(b)(1), (2), (3) and (5) aggravating factors. Specifically, the certified records document defendant's conviction of multiple crimes—robbery, burglary, assault with a deadly weapon, drug possession—over the last decade and a half, as well as the prior prison sentences he served"].)

### D. Prejudice

#### 1. Harmless error standard

The trial court's error in relying on aggravating factors that do not comply with section 1170, subdivision (b) is subject to harmless error review, but the precise standard is not settled, and the issue is pending in our Supreme Court. (*People v. Ruiz* (2023) 97 Cal.App.5th 1068, 1076, review granted Mar. 12, 2024, S283504 (*Ruiz*).)

The majority of the published cases addressing the standard have done so in the context of retroactively applying amendments to section 1170 (Sen. Bill No. 567) to a defendant's upper term sentence.

In *People v. Flores* (2022) 75 Cal.App.5th 495, 500, for example, the Court of Appeal concluded: " 'If a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the

19

beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless."

Thereafter, in *People v. Lopez* (2022) 78 Cal.App.5th 459, 465-466, the Court of Appeal explained: "In order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by [the defendant] was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." The appellate court went on to explain: "If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, [(*Watson*)], that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez*, at p. 467, fn. 11.)

20

Later, in *People v. Dunn* (2022) 81 Cal.App.5th 394, 409-410, review granted October 12, 2022, S275655, the Court of Appeal concluded: "In sum, we think the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez*; *Flores* sets too low a standard for harmlessness and *Lopez* too high. We instead apply a version of the standard articulated in *Lopez*, modified to incorporate [*People v. Watson* (1956) 46 Cal.2d 818] in the first step: The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (Fn. omitted.)

In *Ruiz, supra*, 97 Cal.App.5th 1068, the Court of Appeal reviewed a defendant's upper term sentence that was imposed after the amendments to section 1170 in Senate Bill No. 567 had taken effect, like the sentence at issue here. The People conceded in *Ruiz* that four of seven aggravating factors that the trial court found to be true, and on which the trial court relied in imposing the upper term sentence, " 'were not found true beyond a

21

reasonable doubt by the jury, and . . . it cannot be said with certainty that a jury would . . . conclude [they were true] beyond a reasonable doubt.' " (*Ruiz*, at p. 1075.) Of the remaining three factors the trial court found, the defendant challenged one as not being supported by the certified record of conviction. (*Id.* at p. 1076.) The appellate court engaged in a two-step process to assess prejudice: First, it determined whether "the jury would have found true beyond a reasonable doubt" the aggravating factor that the defendant challenged. (*Id.* at p. 1077.) Second, having concluded the jury would have so found, the Court of Appeal determined "whether the trial court would have selected the upper term had it known that it could rely solely on" the "four applicable aggravating factors" (three of the seven factors the court found, plus the fact of the defendant's prior strike conviction). (*Id.* at pp. 1077-1078.) The appellate court added, "the matter should not be remanded for resentencing if the record clearly indicates that the trial court would have imposed the upper term had it known that it could rely solely on the four applicable aggravating factors . . . . " (*Id.* at p. 1078.)

We reject the test in *Flores* because it ignores the crucial second step—a determination of whether the trial court would have imposed the upper term based on the permissible aggravating factors before it. Because our analysis focuses on step two, and the other tests are similar in their step two analyses, we need not adopt a particular test here.

### 2. Harmless error analysis

As set forth above, we have concluded the trial court's reliance on the following three aggravating factors in imposing the upper term sentence was problematic: (1) the crime involved the threat of great bodily injury; (2) Ruiz showed lack of remorse;

22

and (3) Ruiz engaged in violent conduct that indicates a serious danger to society. We need not engage in the first step analysis, as outlined in *Lopez*, *Dunn*, or *Ruiz*, because even if we remove these three factors from the equation, we would conclude Ruiz suffered no prejudice because the record indicates the trial court would have imposed the upper term sentence based on the other seven applicable and valid factors:[5] (1) Ruiz was armed with a weapon, a knife or bricks, at the time of the commission of the crime; (2) Ruiz committed the crime in and around Rivaz's home; (3) Ruiz made statements indicating an intent to kidnap Rivaz; (4) Ruiz's convictions are of increasing seriousness; (5) Ruiz served a prior term in prison or county jail; (6) Ruiz was on probation, mandatory supervision, post release community supervision, or parole when the crime was committed; and (7) Ruiz's prior performance on probation, mandatory supervision, post release community supervision, or parole was unsatisfactory.

Based on the record before us, including the trial court's comments in sentencing Ruiz, we are convinced the court would *not* have imposed a lower or middle term sentence in the absence of the three (out of 10) aggravating factors. We have no reason to believe the court would have found that the seven applicable and valid factors did *not* outweigh the mitigating circumstances of Ruiz's age (24-25 years old when he stalked Rivaz) and his substance abuse. (See § 1170, subd. (b)(6).) Ruiz stalked Rivaz repeatedly at her home, he was armed with a weapon, and he

---

[5] Based on this resolution of the issue, we need not address Ruiz's additional contention that lack of remorse is not a valid circumstance in aggravation.

threatened to kidnap her and take her to Mexico. Based on these three aggravating factors alone, we have every reason to believe the court still would have found that imposition of a lower or middle term sentence would be contrary to the interests of justice. (See *ibid*.)

## II. Fines and Assessments

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Ruiz contends the trial court "abused its discretion by arbitrarily and irrationally determining that [he] is able to pay" the fines and assessments imposed. He states that the court ordered him to pay a $300 restitution fine, plus $140 in assessments. As discussed above, the reporter's transcript and minute order from the sentencing hearing reflect that the court stayed the $300 restitution fine. Regardless, even if the court had ordered him to pay a total of $440 in fines and assessment, there would be no error here.

In *Dueñas*, *supra*, 30 Cal.App.5th 1157, the Court of Appeal held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court further held "the execution of any restitution fine imposed under [Penal Code section 1202.4] must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) We have previously disagreed with *Dueñas* (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281), and the issue is currently pending in our Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

24

The facts in *Dueñas* were unique. The defendant was an unemployed, homeless mother with cerebral palsy, who lost her driver's license because she was unable to pay more than $1,000 assessed against her for three juvenile citations. Thereafter, she sustained multiple misdemeanor convictions related to driving with a suspended license, each time receiving a jail term and having additional fees she could not afford to pay imposed. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160-1162.) Ultimately, she requested a hearing on her ability to pay the fees, and the trial court imposed an additional fine and assessments—the same fine and assessments at issue here. (*Id*. at pp. 1162-1163.) In reversing the trial court's imposition of the assessments and ordering the trial court to stay execution of the restitution fine, the Court of Appeal pointed out that Dueñas's current situation " 'doesn't stem from one case for which she's not capable of paying the fines and fees,' but from a series of criminal proceedings driven by, and contributing to, Dueñas's poverty." (*Id*. at p. 1164.) The appellate court in *Dueñas* referenced "the counterproductive nature of this system and its tendency to enmesh indigent defendants in a cycle of repeated violations and escalating debt." (*Id*. at p. 1164, fn. 1.)

Even assuming *Dueñas* was correctly decided and applicable to the facts of this case, we would reject Ruiz's challenge to the minimum restitution fine and assessments. Ruiz was 26 years old when he was sentenced to prison. A psychological report he submitted to the trial court with his sentencing memorandum indicates that as an adult, he worked in construction, gardening, remodeling hotels, and in a restaurant. He reported to the psychologist that he last worked in construction around March 2021, about a year and a half before

he was sentenced.  In assessing a defendant's ability to pay, a court may consider a defendant's "past income-earning capacity." (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139.) Moreover, a court may consider whether a defendant has the ability to satisfy the fine and assessments through prison wages and future earnings after release from custody.  (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.)  Given Ruiz's age and self-reported work history, there is no reason to believe he will be unable to earn money at some point in the future to pay the amount he owes.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


WEINGART, J.